IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

| | |
|---|---|
| **JENNIFER H.,** | Civ. No. 1:22-cv-00395-AA |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **COMMISSIONER SOCIAL SECURITY ADMINISTRATION**, | |
| Defendant. | |

_____

AIKEN, District Judge:

Plaintiff Jennifer H. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying benefits. The decision of the Commissioner is

### BACKGROUND

Pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), plaintiff seeks judicial review of the final administrative decision of the Commissioner, arguing that the Commissioner's decision is not based on substantial evidence as required by 42 U.S.C.

§ 405(g). Plaintiff was born in 1977. Tr. 1021. She has at least a high school education. Tr. 1021, 1207. She has past relevant work experience as a radiological tech. Tr. 1021. In March 2019, plaintiff applied for Disability Insurance Benefits, alleging disability beginning October 1, 2014. Tr. 1177-78. The agency denied the claim both initially and upon reconsideration, and plaintiff requested a hearing. Tr. 1095-99, 1101-04. She appeared for a hearing before ALJ Diane Davis in January 2021. Tr. 1028-57. On March 11, 2021, the ALJ issued a decision denying plaintiff's claim for benefits. Tr. 1006-27. Plaintiff requested review of the hearing decision, which the Appeals Council denied in January 2022. Tr. 1162-63, 1-7. Accordingly, the ALJ's decision became the final decision of the agency from which plaintiff seeks review.

## DISABILITY ANALYSIS

The Social Security Act ("the Act") provides that certain individuals who are "under a disability" shall receive disability benefits. 42 U.S.C. § 423(a). The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled under the Act: At step one, the agency determines whether the claimant is engaged in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4). At step two, it determines whether the claimant has one or more severe impairments expected to result in death or that has lasted or is expected to last for a continuous period of at least twelve months. *Id*. §§ 404.1509, 404.1520(a)(4)(ii). At step three, it determines whether any of those impairments "meets or equals" one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id*. § 404.1520(a)(4).

It then assesses the claimant's residual functional capacity ("RFC"). *Id.* At step four, it determines whether the claimant's RFC allows for any past relevant work. *Id.* At step five, it determines whether the claimant's RFC, age, education, and past relevant work experience allow for an adjustment to "other work" existing in significant numbers in the national economy. *Id.* §§ 404.1520(a)(4), 404.1560(c). If the Commissioner cannot meet that burden, the claimant is disabled. Id. § 404.1520(g)(1).

## THE ALJ'S FINDINGS

The ALJ found that plaintiff met the insured status requirements of the Act through March 31, 2020. Tr. 1012. As a result, the relevant period to establish disability is from September 20, 2017, through March 31, 2020, the date last insured.

At step one of the sequential analysis, the ALJ determined that plaintiff had not engaged in substantial gainful activity during the relevant period. Tr. 1012. At step two, she found the following severe, medically determinable impairments: Sjogren's syndrome, rheumatoid arthritis, fibromyalgia, persistent depressive disorder, generalized anxiety disorder, and panic disorder. Tr. 1012. At step three, she found no impairment that met or equaled the severity of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 1013.

Next, the ALJ found that plaintiff had the residual functional capacity to perform a range of light work, as defined in 20 CFR 404.1567(b). The claimant could lift and/or carry 20 pounds occasionally and 10 pounds frequently. She could stand and/or walk for about six hours total in an 8-hour workday, and sit for about six hours total in an eight-hour workday. She could frequently stoop, kneel, and crouch. She

could occasionally crawl and climb. She could tolerate occasional exposure to extreme cold and extreme heat, to work at unprotected heights, and to atmospheric conditions, as defined in Appendix D of the Selected Characteristics of Occupations Defined in the Dictionary of Occupational Titles (SCO), 1993 edition.

The ALJ further determined that plaintiff could understand, remember and carry out more than simple, but less than complex tasks that could be learned and mastered in up to six months or less. She could work in proximity to others, tolerating occasional interaction with supervisors, coworkers, and the public. At such levels, she could maintain concentration, persistence and pace within customary norms, make routine workplace decisions, plan and set goals, adapt to routine workplace changes, travel, and recognize and avoid ordinary workplace hazards. Tr. 1016. Proceeding to step four, the ALJ found plaintiff unable to perform any past relevant work. Tr. 1021.

At step five, she found that plaintiff retained the ability to perform other jobs in the national economy. Tr. 1021-22. The ALJ then found that plaintiff was not disabled under the Act during the relevant period. Tr. 1022.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if the decision is based on proper legal standards and the legal findings are supported by substantial evidence in the record. *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). Substantial evidence "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389,

401 (1971) (citation and internal quotation marks omitted). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusion." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).

When the evidence before the ALJ is subject to more than one rational interpretation, courts must defer to the ALJ's conclusion. *Batson*, 359 F.3d at 1198 (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)). A reviewing court, however, cannot affirm the Commissioner's decision on a ground that the agency did not invoke in making its decision. *Stout v. Comm'r*, 454 F.3d 1050, 1054 (9th Cir. 2006). Finally, a court may not reverse an ALJ's decision on account of an harmless error. *Id*. at 1055–56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

## DISCUSSION

Plaintiff asserts that the ALJ erred in rejecting her subjective symptom testimony and in finding as less than fully persuasive the medical opinions of Cheryle Ramirez, PMHNP; Michael Duffin, MD; and Scott Schell, MD. Last, plaintiff maintains that it was error for the ALJ to discredit lay witness statements

### I. Subjective Symptom Testimony

To determine whether a claimant's testimony is credible, an ALJ must perform a two-stage analysis. 20 C.F.R. § 416.929. The first stage is a threshold test in which the claimant must produce objective medical evidence of an underlying impairment

that could reasonably be expected to produce the symptoms alleged. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). At the second stage of the credibility analysis, absent evidence of malingering, the ALJ must provide clear and convincing reasons for discrediting the claimant's testimony about the severity of symptoms. *Carmickle v. Comm'r*, 533 F.3d 1155, 1160 (9th Cir. 2008).

The ALJ must make findings that are specific enough to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony. *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (internal quotation marks and citation omitted). An ALJ may use "ordinary techniques of credibility evaluation" in assessing a claimant's credibility, such as prior inconsistent statements related to the symptoms, testimony that appears less than candid, unexplained failure to seek treatment or follow a prescribed course of treatment, or a claimant's daily activities. *Id.*

Here, in written testimony, plaintiff described chronic joint pain and body pain, depression, anxiety, and chronic fatigue. Tr. 1220. She testified to the following: She stated that her husband did the errands, cooking, and household finances. Tr. 1220, 1221, 1222, 1223, 1224. Plaintiff's anxiety "escalate[d] significantly" in public and around other people. Tr. 1220. Performing normal daily activities was "a big struggle" due to chronic fatigue. Tr. 1220. She napped for three to four hours in a typical day. Tr. 1220, 1221. She helped her daughter get ready for school,

Page 6 – OPINION AND ORDER

transported her to and from the bus stop, helped with homework, and tucked her in at night. Tr. 1221. Plaintiff's husband had otherwise "taken on the major role of caring for [their] child [and] dog." Tr. 1221. Her husband had to "get on" her to do household chores; plaintiff had "no energy." Tr. 1223. The only place she went was medical appointments and to pick up her medications. Tr. 1224. Depression and anxiety made her antisocial. Tr. 1225. She could pay attention for about ten minutes. Tr. 1225. She did not handle stress or changes in routine well. Tr. 1226.

At the hearing, plaintiff testified that she could not work full time because of pain, anxiety, and panic attacks. Tr. 1043. She experienced numbness and swelling in her hands four to five times a day for about an hour at a time. Tr. 1037, 1039. She could not use her hands when they were numb; she tended to drop things. Tr. 1039. Her neck pain radiated down her arms and caused numbness and difficulty reaching in all directions. Tr. 1038-39. She could stand in one place for only four to five minutes before needing to change positions. Tr. 1037.

Plaintiff claimed that she could sit for only ten to fifteen minutes before needing to get up and move. Tr. 1038. She spent two or three hours a day lying down due to pain. Tr. 1038. She had chronic fatigue and anxiety. Tr. 1038. She avoided other people. Tr. 1038, 1041. She also explained that she struggled to focus, concentrating, and completing tasks. Tr. 1039-41. Her weekly Methotrexate injections caused fatigue and nausea for several days. Tr. 1040. She experienced daily crying episodes. Tr. 1041.

Page 7 – OPINION AND ORDER

She travelled at least annually with her daughter to North Carolina to visit family in June 2020. Tr. 1047-48. The trips were difficult because of her pain and anxiety around other people. Tr. 1049.

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." Tr. 1017.

To support their findings, the ALJ summarized the record with a focus on evidence of "good, stable" and "normal" findings. Tr.1017, 1018. The ALJ discounted plaintiff's subjective symptoms complaints because of inconsistencies with (1) her activities of daily living, including frequent travel, (2) her limited approach to treatment, (3) the objective medical evidence, and (4) improvements through treatment. Tr. 1016-20.

### A.   *Plaintiff's Daily Activities*

An ALJ may consider a claimant's daily activities when evaluating subjective symptom complaints. 20 C.F.R. § 404.1529(c)(3)(i).

Here, plaintiff alleged, "I don't like to be around people. I don't go anywhere." Tr. 1038. The record shows that plaintiff traveled by plane from Oregon to North Carolina with her young daughter. E.g., Tr. 1047-48, 1589. The ALJ explained that plaintiff's frequent travels demonstrated her ability "to interact appropriately with TSA personnel, flight, personnel, and other travelers." Tr. 1015. The ALJ reasonably

considered this inconsistency with the plaintiff's testimony and the alleged severity of her symptoms. Tr. 1014-15, 1018-20.

The record also shows that plaintiff was also able to care for her young daughter, including taking her to school. Tr. 1018. The Ninth Circuit has held that attending to a child's needs and taking them to places, such as school, is reasonably inconsistent with allegations of debilitating symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ noted that plaintiff was able to regularly take her daughter to school, which was reasonably inconsistent with her alleged inability to go out. Tr. 1018; *see, e.g.*, Tr. 1046, 1380, 1407, 1687. The ALJ also relied on evidence that plaintiff could travel to North Carolina with her daughter unaccompanied. *See*, e.g., Tr. 1691.

Plaintiff points out that she testified that pain made it hard to do anything. Tr. 1039. Yet the ALJ emphasized medical evidence that she could exercise and walk almost daily. Tr. 1740. Plaintiff testified that "I don't walk the dog" (Tr. 1018), but March 2020 progress notes showed that she got "a new dog so she is getting exercise taking him out to walk" (Tr. 1687). Plaintiff's providers recommended that she stay active. Tr. 1047; *see*, e.g., Tr. 1395. The medical evidence the ALJ referred to also notes that "at baseline [plaintiff] is independent with ADLs [activities of daily living]." Tr. 295.

Plaintiff contends that these activities "lacked specific details" and should not have been relied upon by the ALJ. ECF No. 16 at 19. But these activities contradicted

Page 9 – OPINION AND ORDER

plaintiff's statements and were appropriate for the ALJ to consider. *See Molina*, 674 F.3d at 1112-13; *Ahearn v. Saul*, 988 F.3d 1111, 1117 (9th Cir. 2021).

The ALJ reasonably considered plaintiff's ability to engage in activities of daily living inconsistent with the alleged severity of her symptoms and substantial evidence supports the ALJ's findings.

### B.     *Plaintiff's Treatment History*

The amount and type of treatment is an important indicator of the intensity and persistence of a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). An ALJ may properly consider the extent to which a claimant's disability claim is based on a stressful living situation, rather than an impairment. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1999).

The ALJ found that plaintiff showed a limited approach to treatment inconsistent with the alleged severity of her symptoms. Tr. 1017-18. In March 2018, plaintiff saw William McCord, M.D., a rheumatologist for fibromyalgia. Tr. 1589. When plaintiff went to North Carolina in 2018, she cancelled her appointments. Tr. 1588-89. Plaintiff "did not return to rheumatology until June 2019, when she saw [Michael] Duffin[, M.D.]" Tr. 1017; *see* Tr. 1585-88. Plaintiff saw Dr. Duffin only periodically. Tr. 1017; *see* Tr. 1588 (indicating plaintiff could return in six months), 1655-57. And plaintiff reported to her provider that she felt "much better in North Carolina." Tr. 1018.

Plaintiff reported that "a lot of her depression is situational." Tr. 1018. In August 2017, plaintiff reported to a provider that her anxiety and depression

increased during a time when her house was under foreclosure and she was moving to Oregon, where her husband's family lived, and with whom she did not get along. Tr. 1386; *see also* Tr. 1043. "the record does not suggest any medical visits when [plaintiff] was in North Carolina[.]" Tr. 1020. Additionally, other than plaintiff's emergency room visit in February 2018, where alcohol intoxication was apparently an isolated issue (Tr. 1594-95), plaintiff sought no "emergency psychiatric care of psychiatric hospitalization" before her date last insured (Tr. 1018).

The ALJ reasonably considered plaintiff's limited and often sporadic treatment in evaluating the reliability of her subjective symptom statements. Tr. 1017-20. The ALJ's findings are supported by substantial evidence in the record.

  **C.** ***Inconsistencies with Medical Evidence***

ALJs consider consistency with the objective medical evidence when evaluating subjective symptom complaints. 20 C.F.R. § 404.1529(c)(2). "Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008). The Ninth Circuit recently clarified that an ALJ may satisfy the relevant standards by citing "examples across a multi-year period contrasting [the claimant's] subjective pain testimony with objective medical evidence." *Smartt v. Kijakazi,* 53 F.4th 489, 499 (9th Cir. 2022).

Plaintiff's subjective symptom testimony is that she suffered debilitating pain making it hard to do anything. Tr. 1039. The ALJ pointed to medical evidence that

plaintiff had "normal mobility and a normal gait," with generally normal findings on physical examinations spanning the record. Tr. 1017.

The medical record shows that in 2017, plaintiff's physicians noted that she was able to "easily stand[] from a seated position without assistance," and she had "4+/5 proximal motor power." Tr. 1395. In 2018, plaintiff had generally normal findings on exam, with good mobility, normal range of motion, normal gait, and no distress. Tr. 1395, 1533, 1590. In 2019, she continued to perform well rising from a chair and walking normally (the "[g]et up and go test"). Tr. 1638. October 2020 records from after her date last insured (March 2020) continued to show that her "get up and go test is normal …. She can arise from a chair without difficulty, walk a significant distance, turn around, and sit down." Tr. 1747. Despite some tenderness, she still had full range of motion throughout. Tr. 1747.

The ALJ also discussed plaintiff's mental health symptoms. On exam, throughout the relevant period, plaintiff sometimes showed depressed, stressed, and anxious symptoms, but still routinely demonstrated normal orientation, normal mood, normal affect, normal memory, normal speech and tone, normal concentration, normal judgment, normal judgment, good insight, and normal thought process with linear and appropriate content. Tr. 1065, 1067, 1082-83, 1302, 1310, 1321, 1326, 1342, 1348, 1362-63, 1369-70, 1374-75, 1400, 1504-05, 1511, 1643, 1730, 1734, 1738, 1743, 1765, 1786, 1806, 1821, 1831, 1838, 1845, 1852, 1869, 1882, 1906.

Plaintiff contends that the ALJ "merely summarized the medical evidence." ECF No. 16 at 18. The record shows that the ALJ met the legal standard and

Page 12 – OPINION AND ORDER

discussed both physical and mental health evidence from across the record, and did not simply summarize the medical evidence. Demonstrated above, the ALJ pointed to key objective findings spanning the relevant period inconsistent with plaintiff's subjective complaints of pain and debility. Tr. 1017-20. Substantial evidence supports the ALJ's findings.

### D. *Plaintiff's Symptoms Improved with Treatment*

ALJs consider treatment and relief when evaluating a claimant's symptoms. 20 C.F.R. § 404.1529(c)(3)(iv). "[E]vidence of medical treatment successfully relieving symptoms can undermine a claim of disability." *Wellington v. Berryhill*, 878 F.3d 867, 876 (9th Cir. 2017) (citing 20 C.F.R. § 404.1520a(c)(1)).

Here, the ALJ found significant evidence of Plaintiff's improvements through treatment, which undermined plaintiff's subjective symptom complaints. Tr. 1017-20. For example, the ALJ noted instances of plaintiff's conditions being controlled or stabilized with treatment. Tr. 1017-20. Plaintiff's treating rheumatologist, Dr. Duffin, said that plaintiff's "[f]ibromyalgia is under good control." Tr. 1749. Dr. Duffin said she should try walking more to help with her fibromyalgia symptoms. Tr. 1588. Plaintiff also had Sjorgen's syndrome, which was also "under good control" with medications. Tr. 1656, 1749. Dr. Duffin noted that plaintiff's "Sjorgen's syndrome is well controlled with her medicines." Tr. 1588. The ALJ reasonably considered plaintiff's improvements with treatment and stable condition.

### II. Medical Opinion Testimony

Page 13 – OPINION AND ORDER

Plaintiff applied for disability benefits after March 27, 2017 (Tr. 1009, 1117), so the revised regulations for medical evidence apply here (20 C.F.R. § 404.1520c). The revised regulations change how ALJs evaluate medical opinions and, in turn, displace prior case law on how courts review Social Security decisions. *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). The revisions to the regulations governing medical opinions now emphasize supportability and consistency as the two most important factors for evaluating medical opinions. 20 C.F.R. § 404.1520c(b)(2). The revised regulations "displace our longstanding case law requiring an ALJ to provide 'specific and legitimate' reasons" to reject opinions, and "the former hierarchy of medical opinions … no longer applies." *Woods*, 32 F.4th at 787. "Now, an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Id.* The "key question is not whether there is substantial evidence that could support a finding of disability, but whether there is substantial evidence to support the Commissioner's actual finding." *Jamerson v. Chater*, 112 F.3d 1064, 1067 (9th Cir. 1997).

### A.   *Cheryle Ramirez, PMHNP*

Plaintiff asserts that it was error for the ALJ to find Nurse Ramirez's treating opinion "less persuasive." Tr. 1019-20; *see generally* Tr. 1658-65. In weighing medical opinion evidence, an ALJ may consider specialization. 20 C.F.R. § 404.1520c(c)(4). An opinion's supportability relates to the source's explanations and presented objective evidence. 20 C.F.R. § 404.1520c(c)(1). A medical opinion's persuasiveness

relates to its consistency with evidence from other sources. 20 C.F.R. § 404.1520c(c)(2).

Nurse Ramirez was a psychiatric nurse practitioner who opined in October 2020 that plaintiff had "mild" to "marked" limitations in mental health function. Tr. 1662, 1665. The ALJ found that the opinion lacked support because it often related to plaintiff's physical condition, which was outside the scope of Nurse Ramirez's specialization. Tr. 1019. Nurse Ramirez opined that plaintiff had to rest frequently due to pain and fatigue. Tr. 1663. The ALJ noted that Nurse Ramirez's treating records did not mention that need. Tr. 1019-20; *see*, e.g., Tr. 1527-28, 1677-78, 1681, 1683.

The ALJ also found the opinion inconsistent with the longitudinal record. Tr. 1019-20. Nurse Ramirez flagged a marked limitation in plaintiff's ability to interact appropriately with the public. Tr. 1662. The ALJ found that plaintiff "was able to travel independently with her young daughter. Her ability to fly across the country, where she would have to interact with TSA personnel, flight personnel, and other travelers, without any noted issues, does not support this finding." Tr. 1019; see Tr. 1015, 1048. As discussed above, plaintiff also took her daughter to school. Tr. 1018; *see Rollins*, 261 F.3d at 857. Nurse Ramirez's opinion was also inconsistent with plaintiff's ability to drive, for which "even minimal operation of a motor vehicle requires substantial attention and concentration, in order to remember, understand and carry out complex functions, and to integrate such complex functions into independent situational awareness and projective judgment every few seconds." Tr.

1014. The ALJ added, "Driving is certainly not a simple and routine set of functions." Tr. 1014. Substantial evidence supports the ALJ's analysis.

### B.     *Michael Duffin, MD*

Plaintiff assigns error to the ALJ's finding that Dr. Duffin's treating opinion was unpersuasive. *See* Tr. 1020; Tr. 1666-74. The ALJ found that the opinions lacked supportability. Tr. 1020.

Dr. Duffin opined, in part, that plaintiff would have to lie down and sleep two to three times daily due to pain and fatigue. Tr. 1668. The ALJ found that this lacked support in any treating records, particularly "given the lack of any regular treatment, other than the annual visits." Tr. 1020; *see*, e.g., Tr. 1588.

Treating records showed that plaintiff received medication treatment for fibromyalgia-related chronic fatigue (Tr. 1591), and medical evidence the ALJ relied on in the record is that plaintiff's fibromyalgia was under "good control" with medication. Tr. 1749. Dr. Duffin's opinion was also inconsistent with plaintiff's ability to care for her small daughter during the relevant period. *See* Tr. 1018

Dr. Duffin noted that plaintiff could not walk more than two hours a day (Tr. 1672), but still recommended that plaintiff stay active and walk more (Tr. 1588). Such limitations also conflicted with plaintiff's good "get up and go" testing and normal gait and walking. Tr. 1395, 1533, 1590, 1638, 1747. The ALJ also relied on evidence that plaintiff could walk the dog and exercise. Tr. 688, 1687.

Dr. Duffin first saw plaintiff on June 12, 2019. Tr. 1020 (citing Tr. 1585). And Dr. Duffin did not see plaintiff again until June 2020, after the date last insured. Tr.

1657. In June 2020, plaintiff was noted to have had good range of motion, no joint tenderness, and her get up and go testing was normal. Tr. 1657. In sum, Dr. Duffin's opinion contradicted the record and was not supported by his own treating records.

Plaintiff contends that the ALJ had to explain how more treatment could have better supported the opinion. ECF No. 16 at 12. But an ALJ may validly consider the infrequency and limited extent of treatment in considering a plaintiff's symptoms. 20 C.F.R. § 404.1529(c)(3)(iv)-(v). Plaintiff further contends that the ALJ's reliance on objective findings was inappropriate. ECF No. 16 at 12 (citing *Revels v. Berryhill*, 874 F.3d 648, 656 (9th Cir. 2017)). Here, the ALJ afforded plaintiff "considerable benefit of the doubt in finding fibromyalgia to be a medically determinable impairment." Tr. 1017. Plaintiff maintains that the ALJ erred by considering the fact that Dr. Duffin's opinion was dated more than a half-year after the date last insured. ECF No. 16 at 13. That said, the ALJ may appropriately consider whether a medical opinion was dated within the insured status period. *See Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998), *as amended* (Jan. 26, 1999). Plaintiff has shown no error. The ALJ reasonably evaluated the persuasiveness of Dr. Duffin's opinion.

### C. *Scott Schell, MD*

The ALJ found Dr. Schell's examining opinion "less persuasive." Tr. 1019; *see generally* Tr. 1379-82. Dr. Schell conducted a psychiatric examination of plaintiff in October 2016. Tr. 1379. Dr. Schell opined, in part, that plaintiff was preoccupied with widespread somatic concerns and needed help doping chores despite caring for her four-year-old daughter. Tr. 1381. Dr. Schell determined that plaintiff could

understand simple directions but that her ability to perform simple repetitive tasks and for relationships were adversely influenced by fatigue, pain, weakness, and mental health symptoms. Tr. 1381.

The ALJ found that Dr. Schell's opinion lacked support and was dated nearly a year before the period at issue. Tr. 1019. The ALJ explained that Dr. Schell relied on and considered plaintiff's physical condition, which went beyond the scope of the psychiatric evaluation and Dr. Schell's expertise. See 20 C.F.R. § 404.1520c(c)(4). The ALJ found Dr. Schell's opinion to be, overall, inconsistent with the record, particularly mental exam results from within the relevant period, which largely reflected normal findings. *See* Tr. 1019 (ALJ's decision citing Tr. 1527, 1643, 1677, 1681, 1685, 1689, 1693, 1697, 1699, 1705, 1714, 1718, 1720, 1726, 1729).

Plaintiff argues that the record showed she sometimes presented with depressed and anxious symptoms. ECF No. 16 at 15. The ALJ also found that Plaintiff sometimes presented with such symptoms (Tr. 1018), but even if the record could be construed more favorably, "it is the ALJ's conclusion that must be upheld." *Burch*, 400 F.3d at 679. The ALJ reasonably considered the balance of the objective mental health findings as a whole. Tr. 1019. Substantial evidence supports the ALJ's evaluation of Dr. Schell's opinion.

### III. Lay Witness Testimony

The ALJ considered the nonmedical source statement from plaintiff's husband, Ronald Alger. Tr. 1020; *see generally* Tr. 1242-49. Mr. Alger's statement was similar to plaintiff's subjective symptom complaints. *See* Tr. 1242-49. The ALJ specified that

Mr. Alger's statement conflicted with plaintiff's ability to frequently travel to North Carolina and care for their daughter. Tr. 1020. An ALJ's valid reasons for rejecting a claimant's subjective symptom statements applies equally to similar nonmedical source statements. *Valentine v. Astrue*, 574 F.3d 685, 694 (9th Cir. 2009). Plaintiff has not shown error. Substantial evidence supports the ALJ's findings.

## CONCLUSION

For the reasons explained, the decision of the Commissioner is AFFIRMED. This case is dismissed. Judgment shall be entered accordingly.

IT IS SO ORDERED.

Dated this 6th day of September 2023.

_____/s/Ann Aiken_____

Ann Aiken
United States District Judge